UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

DAVID CHRISTIAN DEJONGE,      )
# 490833,                                      )
                                                       )
                    Petitioner,            )         Case No. 1:16-cv-980
                                                       )
v.                                                    )         Honorable Gordon J. Quist
                                                       )
DE WAYNE BURTON,                  )
                                                       )
                    Respondent.        )
——————————————)

## **REPORT AND RECOMMENDATION**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner's convictions stem from the murder of Sarah Wilson on or about May 9, 2008, the dismemberment of her body, and the disposal of her torso in a swampy area in the vicinity of a cabin near Kalkaska, Michigan.   On October 5, 2009, a Kalkaska County Circuit Court jury found petitioner guilty of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a) and mutilation of a dead body, MICH. COMP. LAWS § 750.160.  The trial court judge sentenced petitioner as a second habitual offender to concurrent terms of life without parole for the murder conviction and 95 to 180 months' imprisonment for the mutilation conviction.

On August 4, 2016, petitioner filed his habeas corpus petition.  Petitioner seeks federal habeas corpus relief on 38 grounds rejected for lack of merit by Michigan's courts:

I.      Petitioner was denied the effective assistance of counsel by his attorney's failure to object to testimony by the government's DNA expert that the DNA profile of body tissue taken from the torso was consistent with a profile of the offspring of Patrick and Helen Wilson, where the witness was unable to testify to any statistical probability of a random match.

II.     Petitioner was denied his constitutional right to due process of law by being convicted of premeditated murder where the evidence, taken in a light most favorable to the prosecution, was insufficient to convince a rational trier of fact that premeditation was proved beyond a reasonable doubt because no evidence was presented which showed the manner in which the victim was killed and no evidence of motive or other factors consistent were presented.

III.    Petitioner was denied his federal constitutional right to a public trial. Three days of jury *voir dire* was held in chambers without any reason given and without defense consent or waiver of right.

IV.     Petitioner was denied his federal constitutional right to a fair trial and due process by the trial court's partial denial of a motion to suppress gruesome and prejudicial photographs.

V.      Petitioner was denied his federal constitutional right to a fair trial and/or due process by the trial court's denial of appropriate funds for an expert witness.

VI.     Petitioner was denied his federal constitutional right to a fair trial and/or due process by the trial court's abuse of discretion in allowing the State's forensic pathologist, Dr. Start, to testify on multiple issues, where his opinion was based on speculation, conjecture, unreliable facts and data, and was not based on reliable scientific methodology, as it is the court's responsibility to act as gatekeeper to the admissibility of expert testimony and his was unreliable and inadmissible as a matter of law.

VII.    Petitioner was denied his federal constitutional right to present a defense.

VIII.   Petitioner was denied his federal constitutional right to a fair trial and/or due process through the trial court's rulings regarding the Common Ground Sanctuary records and other rehab/medical information that the judge reviewed *in-camera*.

IX.     Petitioner was denied his federal constitutional right to a fair trial and/or due process by the trial court allowing witness testimony

regarding two separate bad acts without formal notice to the defense and court, and without adequate reasons established on the record.

X.      Petitioner was denied his federal constitutional right to a fair trial and/or due process when the trial judge abused its discretion as gatekeeper of material, including misleading and prejudicial testimony and comments submitted to the jury, against court rules and fundamental fairness.

XI.     Petitioner was denied his federal constitutional right to a fair trial and/or due process by the admission of evidence unlawful prejudicial evidence obtained from illegal arrest(s) and searches, or petitioner was denied the effective assistance of counsel by his attorney's failure to research and effectively litigate the issues involved, arising from the illegal arrest(s).

XII.    Petitioner was denied his federal constitutional right to a fair trial and/or due process when the jury was witness to a prejudicial outburst from the gallery or was defendant denied the effective assistance of counsel by his attorney's failure to request a mistrial.

XIII.   Petitioner was denied his federal constitutional right to the effective assistance of counsel by his attorney's failure to do proper investigations, both factual and legal, adequate for pre-trial motions, research of, and interviews of, witnesses; analysis and preparation of all substantial defenses; and prepare for known legal arguments to be presented.

XIV.    Petitioner was denied his federal constitutional right to due process due to the failure of the police officers to comply with the *Miranda* requirement of advising petitioner of his rights during custodial interrogations or was petitioner denied his constitutional right to the assistance of counsel by his attorney's failure to properly raise and litigate the issues involved.

XV.     Petitioner was denied his federal constitutional right to the assistance of counsel by his attorney's failure to investigate and ask questions related to one of the defense theories that the evidence supported.

XVI.    Petitioner was denied his federal constitutional right to the effective assistance of counsel by his attorney's failure to request a bill of particulars when following the preliminary examination there was no clarity of the prosecution's theory of what caused the alleged victim's death and how defendant did murder Sarah Wilson.

XVII.    Petitioner was denied his federal constitutional right to the effective assistance of counsel by his attorney's failure to request that inmate defendant defense witnesses be dressed out and not appear in prison garb.

XVIII.    Petitioner was denied his federal constitutional right to the effective assistance of counsel by his attorney's failure to move the court to suppress the May 15, 2008, search of the DeJonge family cabin for lack of probable cause and the absence of any articulated crime having been or being committed.

XIX.    Petitioner was denied his federal constitutional right to the effective assistance of counsel by his attorney's failure to object, correct or rebut incorrect prejudicial testimony or comments made by the prosecution and its witnesses.

XX.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecutorial misconduct by the prosecutor allowing and even encouraging a portion of the *voir dire* to be conducted in-chambers and not in public court.

XXI.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecutor introducing and arguing bad acts to characterize petitioner without prior notice to the defense and court.

XXII.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecution's subornation of perjury and misleading the witnesses and jury as to the facts of the case, or petitioner was denied the effective assistance of counsel for his attorney's failure to object.

XXIII.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecution objecting to defense's motions for funds for experts and then arguing that the State's experts were unrebutted.

XXIV.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecutor arguing facts without sufficient evidence to support any logical or rational inference.

XXV.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecution's arguments regarding defense witnesses and the defense team.

XXVI.     Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecution's presentation of highly prejudicial photographs.

XXVII.    Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by police misconduct that is attributed to the prosecution.

XXVIII.   Petitioner was denied his federal constitutional right to due process of law and/or a fair trial by the prosecution allowing a prosecution and conviction for murder when there was no cause of death determined, the remains were not proven to be that of the named victim, and there was reasonable doubt of petitioner's guilt.

XXIX.     Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecution's elicitation of inadmissible testimony from April Bushman or by the prosecutor's misrepresentation of said testimony.

XXX.      Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecutor's appeal to the emotions and sympathies of the jurors.

XXXI.     Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecutor's misleading the jury by misstating facts presented in evidence.

XXXII.    Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecutor stating matters of credibility and/or evidence as facts, removing the jury's role as factfinder.

XXXIII.   Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecutor vouching for the credibility of the prosecution's witnesses.

XXXIV.    Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecutor testifying in his closing that petitioner lied about everything.

XXXV.     Petitioner was denied his constitutional rights to a fair trial and/or due process by the prosecutor declared and testified as from his own personal knowledge "he is guilty."

XXXVI.    Petitioner was denied the effective assistance of appellate counsel for his appellate counsel's failure to fully address all of petitioner's issues.

XXXVII.  [Duplicative claim of ineffective assistance of appellate counsel].

XXXVIII. Petitioner was denied his federal constitutional right to a fair trial and/or due process by the cumulative effect of all the aforementioned errors.[1]

(*Id.* at ECF No. 1 at PageID.6-10, 30-31; ECF No. 15-52, PageID.2235-2521).

Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit.  (ECF No. 14).

Judge Quist has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.  After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.  Petitioner has not shown that the state court decisions rejecting the grounds raised in the petition "were contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]."  28 U.S.C. § 2254(d).  I recommend that the petition be denied on the merits.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly

---

[1] Petitioner's claims that his rights under Michigan's constitution were violated are ignored because federal habeas corpus relief is only available to a person held in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings – not dicta – of Supreme Court decisions.  *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.).  "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *Id.*  (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).  Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' ").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254(d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

I.    **Circuit Court Proceedings**

A.    Pretrial Proceedings

On July 30, 2008, petitioner received a preliminary examination hearing. (ECF No. 15-2). He was charged in a two count felony complaint:  Count I was a

charge of open murder[2] and Count II was a charge of mutilation of a dead body.  The prosecution presented evidence from thirteen witnesses, including David Start, M.D, a forensic pathologist (*Id.* at PageID.394-440).  At the conclusion of the preliminary examination hearing, Judge Lynne Buday bound over petitioner for trial on both charges.  (*Id.* at PageID.636).

Chief Judge Janet Allen was the trial court judge.  She conducted numerous pretrial hearings on motions filed by petitioner's attorney and addressing the status of the case as it moved towards trial.  (ECF No. 15-3 through 15-30).  These included hearings addressing motions to suppress petitioner's statements, evidence that had been seized, as well as motions to exclude photographs and other evidence.  (ECF No. 15-23; ECF No. 15-24; ECF No. 15-25;  ECF No. 15-27; ECF No. 15-29; ECF No. 15-30).  With regard to petitioner's statements to police, the statements were not suppressed where petitioner had not been in custody or the statements were volunteered.  Petitioner's statements were suppressed when he had been in custody and questioned without *Miranda* warnings, or after such warnings from the point where he made an unequivocal request for counsel.[3]  (ECF No. 15-22 at PageID.774-77; ECF No. 15-24 at PageID.829-30, 833-34; ECF No. 15-25 at PageID.873-74, 886-87).  Petitioner withdrew motions to suppress some statements that he made to police

---

[2] Under Michigan law, the charge of open murder allows a defendant to be convicted of first-degree or second-degree murder or manslaughter, depending on the proofs. MICH. COMP. LAWS § 767.71; *see People v. Johnson*, 398 N.W.2d 219, 222-23 (Mich. 1986); *see also Tran v. Berghuis*, No. 1:06-cv-428, 2014 WL 4063832 at *7 n.4 (W.D. Mich. Aug. 18, 2014).

[3] The trial court judge discussed both *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Edwards v. Arizona*, 451 U.S. 477 (1981).  (ECF No. 15-22, PageID.774-75).

(ECF No. 15-22, PageID.769), which would allow him to provide the jury with a version of events without requiring him to testify at trial.  The parties reached an agreement regarding another statement and the agreement was placed on the record. (*Id.* at PageID.770).

On May 6, 2009, the trial court judge conducted a status conference where the jury selection process was discussed.  Petitioner was present.  Judge Allen was concerned that, given the anticipated length of trial, it might be difficult seating a jury.  Because few people could afford to miss up to four weeks of work, the judge planned to screen a much larger panel of jurors than normal.  (ECF No. 15-18 at PageID.720).  The judge described the economy as "horrible" and emphasized that the court and the attorneys needed "to anticipate and think of how to deal with the issue of [potential jurors] missing 20 days of work."  (*Id.* at PageID.723).  The attorneys offered a number of suggestions, based on their experience with similar trials, regarding juror questionnaires and conducting *voir dire*.  The prosecutor cited an example where all the potential jurors were brought into a large auditorium and the *voir dire* of individual jurors had been conducted in a smaller room.  (*Id.* at PageID.720-21).  Judge Allen directed the attorneys to work on assembling an appropriate questionnaire.  (*Id.* at PageID.722-23).

On June 19, 2009, the trial court judge held an evidentiary hearing.  (ECF No. 15-20).  The purpose of this hearing was to hear testimony from the prosecution's expert witnesses to determine what procedures they had followed and to assist in the trial court in addressing petitioner's attorney's requests for appointment of various

experts.  (*Id.* at PageID.740).  Troy Ernst described the analysis that he conducted of a paint chip that investigators found on a latex glove and the paint chip taken from a 1980 Ford Bronco.  He described the group of Ford vehicles from the early 1980s where that color and type of paint had been used.  Mr. Ernst indicated that the tailgate of the 1980 Bronco may have been the source of the paint chip found on the glove.  (*Id.* at PageID.741-44).

John Lucy testified regarding his analysis of tire tracks and footwear impressions.  A footprint found by investigators could have been made by a rubber boot recovered from the DeJonge cabin because the size and tread design matched the impression.  (*Id.* at PageID.745-46).  The 1980 Ford Bronco could not be eliminated as a possible source of the partial tire impressions found by investigators. (*Id.* at PageID.745-47).

David Hayhurst, a DNA forensic scientist, testified that the root of a hair recovered from a latex glove matched petitioner's DNA profile.  The recovered torso was a match for Sarah Wilson, the daughter of Patrick and Helene Wilson.  The stain found on the rim of a wheelbarrow at the DeJonge cabin was a DNA match for Sarah Wilson.  A stain found on the rear carpet floor of a silver Blazer was consistent with the DNA profile for Sarah Wilson.  The tissue recovered from a branch was consistent with Sarah Wilson's DNA profile.  Tissue recovered from a tree trunk and a piece of black plastic also matched Sarah Wilson's DNA.  While a random DNA match was not impossible, the odds against it made it "very highly unlikely."  (*Id.* at PageID.748-54).

Jeffrey Nye provided testimony regarding the accreditation of the forensic laboratory. (*Id.* at PageID.754-58). Fran D'Angela testified that she was the person that sent the samples to Mr. Hayhurst for testing. (*Id.* at PageID.758-60).

On July 13, 2009, Judge Allen granted petitioner's attorney's motion to have Strand Analytical Laboratories examine all DNA information and to assist petitioner's attorney in preparing for cross-examining witnesses regarding DNA evidence. All Michigan State Police laboratories were ordered "to turn over all information with regard to all DNA tests performed in this case to Strand Analytical Laboratories forthwith." (ECF No. 15-22, PageID.770).

B.    Trial and Sentencing

Petitioner's trial began on September 14, 2009, and it concluded on October 5, 2009, with the jury's verdict finding petitioner guilty of first-degree premeditated murder of Sarah Wilson and mutilation of her dead body. (Trial Transcripts, TT1-16, ECF No. 15-31 through 15-46).

At no time during the jury selection process did any party object to either the location or manner in which *voir dire* was conducted. (TT1, ECF No. 15-31; TT2, ECF No. 15-32; TT3, ECF No. 15-33). Judge Allen explained the purpose of the *voir dire* process, and then she gave a series of typical questions regarding whether potential jurors knew the witnesses likely to be called during trial, whether they had vision or hearing problems, whether they had personal knowledge about the case or had heard about the case, whether they had previously served on a jury, whether they had particular relationships with law enforcement officers. The judge also asked whether

potential jurors had concerns about serving as jurors on a trial that was anticipated to last three to four weeks.  (TT1 at 4-45, ECF No. 15-31, PageID.967-77; TT2 at 4-35, ECF No. 15-32, PageID.1030-39).  After jurors who might be dismissed for cause had been identified, they were subject to *voir* dire questioning on the record on an individual basis in chambers.  (TT1 at 45, PageID.977; TT2 at 36, PageID.1039; TT3 at 9, ECF No. 15-33, PageID.1095).  The potential jurors were ordered not to discuss the case or read, listen or watch news reports or use any electronic device to obtain information about the case. (TT1 at 45, 234, PageID.977, 1025; TT2 at 35, 121-22, 241, ECF No. 15-32, PageID.1039. 1060-61, 1090).   The *voir dire* process later continued in the courtroom with all the potential jurors not already excused for cause. (TT3 at 226, ECF No. 15-33, PageID.1150).  There were no additional requests to remove any potential juror for cause.  (*Id*. at 266-67, PageID.1160).  Jury selection concluded with the prosecution and defense expressing satisfaction with the jury.  (*Id*. at 284, 287, PageID.1164-65).

On May 9, 2008, then 26 year old Sarah Wilson was expected at her parents' house in Big Rapids, Michigan, for Mother's Day weekend.  Her parents, Patrick and Helene Wilson, were looking after their daughter's three year old son.  Sarah Wilson never arrived.  (TT4 at 75-81, 118, 153, ECF No. 15-34, PageID.1188-89, 1199, 1207). Sarah Wilson had issues with alcoholism and a bipolar condition, but was in the process of trying to get her life under control.  (TT4 at 81-82, 89-90, 118-21, ECF No. 15-34, PageID.1189, 1191, 1199).   When Helene Wilson was unable to reach her daughter Sarah, she called petitioner.  (TT4 at 84-85, ECF No. 15-34, PageID.1190).

Petitioner told her that he last saw Sarah Wilson on the night of May 8, 2008. Petitioner stated that she had jumped out of his truck at a closed liquor store and left in a truck with two men who agreed to drive her to Big Rapids. (TT4 at 85-86, 90 ECF No 15-34., PageID.1190-92). In a later telephone conversation, petitioner stated that the Sarah Wilson was still at the liquor store when he drove off. (TT4 at 96-97, ECF No. 15-34, PageID.1193).

David James was the father of Sarah Wilson's child. Mr. James's work often took him outside the state. Helene and Patrick Wilson would help out by looking after their grandson. David James was working on a number of work-related projects in California during the period from May 6, 2008, through May 12, 2008. On May 10, 2008, Mr. James telephoned defendant after learning from Helene Wilson that Sarah Wilson had never arrived. Petitioner told Mr. James that he last saw Sarah Wilson was when she got out of truck car. Sarah Wilson had moved out of Mr. James's house and began living with petitioner in approximately January 2008. She came back to see Mr. James four or five times between January and May 2008. (TT5 at 202-22, ECF No. 15-35, PageID.1281-86; TT6 at 11-31, 48-55, ECF No.15-36, PageID.1294-99, 1303-05).

April Bushman testified that she was a friend of both petitioner and Sarah Wilson. Petitioner did not approve of David James and considered him to be a "troublemaker." Petitioner told Ms. Bushman that "I'm a good guy. I'm hard working, and I care about [Sarah Wilson]. She should be with me." Sarah Wilson promised petitioner that she would not see David James anymore. Petitioner would

-15-

drive to Mr. James's home to see if Sarah Wilson was there and would catch her with Mr. James.  Ms. Bushman testified that petitioner called Sarah Wilson his "lover." Ms. Wilson never considered herself to be petitioner's girlfriend.  According to April Bushman, Sarah Wilson only became sexually active with petitioner as "a means ... to get what she wanted."  Ms. Wilson "was always about David James.  That was her focus always."  (TT7, 252-68, ECF No. 15-37, PageID.1421-25).

On May 8, 2008, petitioner drove Sarah Wilson to a cabin owned by his parents near Kalkaska, Michigan.  James Clem, who had a home with his wife Barbara about one-quarter mile from the cabin, saw petitioner and Sarah Wilson drive past on May 8, 2008.  On May 9, 2008, however, Mr. and Mrs. Clem only saw petitioner driving by himself.  He drove "very, very fast" past their home several times that day. Petitioner went by at a fast enough rate to convince Mr. Clem to go out and dig a trench in the little road to act like a speed bump.  Another neighbor, John Moore, hit the trench and bottomed out his truck on the morning of May 10, 2008.  (TT6 at 189- 222, 228-46, 250-61, ECF No. 15-36, PageID.1338-53, 1354-56; TT7 at 9-46, ECF No. 15-37, PageID.1360-70).

 A video recording and price scanning data were introduced showing that petitioner purchased large garbage bags, bleach, resolve carpet cleaner and a large lime colored tote at Glen's Market in Kalkaska.  (TT8 at 10-46, ECF No. 15-38, PageID.1432-41).  Bleach is used to breakdown blood.  Bleach was later found inside petitioner's parents' cabin.  (TT12 at 116-17, ECF No. 15-42, PageID.1722).

On May 11, 2008, Helene Wilson contacted the Michigan State Police to report

that her daughter Sarah Wilson was missing.    (TT4 at 154, ECF No. 15-34, PageID.1208).  Michigan State Police Trooper Robert Glentz telephoned petitioner on May 12, 2008.   Petitioner told Trooper Glentz that he and Sarah Wilson were in Kalkaska County on May 8, 2008, and that she was intoxicated.  Petitioner stated that they argued outside of a liquor store at about 11:30 p.m. and that the victim left his truck with a bag of clothes.  She then asked two men in a blue pickup truck, which had a four wheeler and a motorcycle in the back, for a ride.  Petitioner said that he drove off after the victim kicked his truck.  (TT6 at 170-79, ECF No. 15-36, PageID.1334-36).

On May 14, 2008, petitioner told Detective Todd Krumm that he and Sarah Wilson had gone up north to his parents' cabin.  They had an argument.  Petitioner told Detective Krumm that the last time that he had seen Ms. Wilson was when he dropped her off at a party store.  Petitioner indicated that she got into a vehicle and left. (TT4 at 177-81, 15-34, PageID.1214).  Petitioner indicated that he was very busy at work, but agreed to meet with Detective Krumm at the Bloomfield Township police station between 4:00 and 4:30 p.m.  Petitioner never attended the scheduled meeting. (TT4 at 181-83, PageID.1214).  The Detective later came into possession of a receipt from a gas station indicating that petitioner was in Grayling on May 14, 2008.  (*Id.* at 183-85, PageID.1215).

On  May  15, 2008,  petitioner  had  another  telephone  conversation  with Detective Krumm.  During this phone call, petitioner indicated that he had taken Sarah Wilson up to his parents' cabin in Kalkaska to go mushroom picking.  He stated

that he and Ms. Wilson got into an argument while he was driving to the East Lake General Store to get more liquor.  Petitioner claimed that Sarah was "off her meds and she was acting mean."  Petitioner claimed that Sarah Wilson jumped out of his truck, kicked the truck, grabbed her duffel bag and threw it against the truck, and then left with two other men in a pickup truck pulling a trailer of ATVs or motorcycles.  Petitioner stated that he went back to the cabin, waited twenty or thirty minutes, then went back to look for Sarah Wilson at the general store.  He did not find her, then he returned to the cabin where he cleaned up and spent the night there. (TT4 at 182-85, PageID.1215).

During a second telephone conversation Detective Krumm asked for a better description of where the cabin was located.  Petitioner also gave three possibilities where Sarah Wilson could have gone.  The first possibility was visiting someone out in Arizona.  The second possibility was someone named Brown that Ms. Wilson had met on a bus and he had indicated that he could probably get her a job in Lansing. The third possibility was an unknown man from Lansing who had called him and told him to pack up Sarah Wilson's belongings and the man would call back with further instructions where to deliver those items.  Detective Krumm instructed petitioner that if he received a call from anyone regarding Sarah Wilson's personal property, he should not deliver it and contact Detective Krumm.  (TT4 at 186-87, PageID.1216).

Detective Krumm later reviewed a videotape from the surveillance system at the East Lake General Store and he did not see petitioner or Sarah Wilson on that videotape at the time petitioner claimed they were there.  (TT4 at 189, ECF No. 15-

-18-

34, PageID.1216; TT6 at 56-96, ECF No. 15-36, PageID.1315; TT12 at 184-98, ECF No. 15-42, PageID.1739-43).

Petitioner also told Patrick Wilson that a man named "Jim" from Lansing had called him, stating that he wanted Sarah Wilson's belongings because he was going to give her a job.  (TT4 at 158-62, 181-87, ECF No. 15-34, PageID.1209-10, 1214-16). James Thelen testified that he met petitioner and Sarah Wilson in April 2008, at a Greyhound bus stop.  He had wanted to discuss a job with Sarah Wilson.  James Thelen never made any statement asking petitioner to send him any of Sarah Wilson's belongings.  (TT10 at 168-80, 186-96, ECF No. 15-40, PageID.1600-1603, 1605-07).

On May 15, 2008, police obtained a search warrant for petitioner's parents' cabin.  They arrived around 6:00 p.m. in the evening.  They encountered three sets of closed locks.  The lock on the driveway was detached by removing bolts.  The outer door was pried open with a pry bar.  A padlock on an inner door was removed with a bolt cutter.  At a later date, the police in Kalkaska obtained the keys that petitioner had at the time of his arrest on May 15, 2008, and they fit all three locks.  On May 15, 2008, the officers found a wheelbarrow right in the center of a room inside the cabin.  It did not take officers long to notice that there was blood on the wheel. There was also a green leaf stuck to the wheelbarrow suggesting recent use.

Officers followed a wheelbarrow path to its end.  A conifer about the size and shape of a Christmas tree had apparently been placed in the path because there was no stump.  It appeared to have been recently cut because it was still green.  There

had also been a piece of conifer in the sink in the cabin.  The police returned to the area at the end of the path when it was dark.  They sprayed Luminal to detect the presence of human blood.  It "fluoresced just about the entire distance around that tree and right in front of the tree."  Given those results and the size of the crime scene, a decision was made to assign troopers to stay at the location overnight and to have the evidence technicians come in the next morning.   The next morning, the authorities discovered a wooden club, approximately the size and length of a baseball bat, in the area under the tree.  Sarah Wilson's DNA was found on the club.  Her DNA was also found on the tree and on the rim of the wheelbarrow found locked inside the cabin.  (TT11 at 94-115, ECF No. 15-41, PageID.1652-57; TT12, at 7-157, ECF No. 15-42, PageID.1695-1732).

On May 15, 2008, police began surveillance.  Petitioner was followed from his work location in a light industrial park in Bloomfield Township to his home in Bloomfield Hills, Michigan.  He made a few brief stops and then went back to his workplace.  Petitioner was observed transferring two large plastic bins or totes from his old gray or silver Chevy Blazer to a newer blue Chevy Trailblazer that belonged to his employer.   No other individuals were observed in the parking lot and the business did not appear to be open.  (TT5 at 13-23, ECF No. 15-35, PageID.1236).

The police impounded petitioner's old gray or silver Blazer.  It had layers of mud and dirt on the exterior.  There was a stick protruding from a damaged area of the rear bumper.  The vehicle was packed with "a lot of women's clothes" and two sleeping bags.  Sarah Wilson's DNA was found on the carpet of petitioner's Blazer

and on a boot taken from petitioner's home.  (TT5 at 47-49, 127-39, ECF No. 15-35, PageID.1242, 1262-65; TT6 at 184-85, ECF No. 15-36, PageID.1337; TT10 at 59-60, 249-50, ECF No. 15-40, PageID.1573, 1620-21).

On the evening of May 15, 2008, petitioner was pulled over on I-75 in Oakland County for speeding.  Petitioner was arrested for possession of prescription drugs for which he had no prescription.  Petitioner had been driving a blue Trailblazer and behind the driver's seat police found a Glen's Market shopping bag containing rubber gloves, a flashlight, leaf and garden bags, and garbage bags.  In the rear compartment there was a large basket or plastic tub containing a purse, women's clothing, and a Greyhound bus ticket with Sarah Wilson's name on it.  Sarah Wilson's wallet was found inside this vehicle.  (TT4 at 216, ECF No. 15-34, PageID.1233; TT5 at 116-201, ECF No. 15-35, PageID.1259-1280).

On May 18, 2008, between 3:00 p.m. and 4:00 p.m., police in the Kalkaska area were in the process of attempting to extract one of their vehicles that was stuck in the mud on North Trail.  Petitioner and Laverne Vantatenhove arrived in the area. (TT12, at 33, ECF No. 15-42, PageID.1701).  Mr. Vantatenhove, testified that he was a longtime friend of petitioner and that he lived in Saugatuck, Michigan. (TT7 at 47-48, ECF No. 15-37, PageID.1370).  He testified that, on May 18, 2008, he was driving up north in his Windstar and pulling a trailer with a motorcycle on it.  (*Id.* at 53, PageID.1371).  Mr. Vantatenhove and petitioner encountered the police on North Trail, petitioner indicated that they were probably looking for him.  (*Id.* at 57, PageID.1372).  Mr. Vantatenhove and petitioner were pulled over by the police.  (*Id.*

at 63, PageID.1374).  Mr. Vantatenhove testified that they eventually went back to
the cabin where police spoke with petitioner.  (*Id.* at 117-19, PageID.1388).  Shortly
thereafter, Mr. Vantatenhove drove petitioner all the way back to his home in
Bloomfield Hills.  (*Id.* at 121, PageID.1388).

Petitioner later left two voicemails for Mr. Vantatenhove.  One message
suggested where petitioner was planning to go to hide out.  The other directed Mr.
Vantatenhove to get the van that Sarah Wilson had been driving that was still parked
in Bloomfield, sell it and keep the money.  At the end of the second call, petitioner
indicated that he would be turning his phone back on at 7:00 p.m.  (TT7 at 80-83,
ECF No. 15-37, PageID.1378-79; TT8 at 85-92, ECF No. 15-38, PageID.1450-52).

On May 18, 2008, at about 8:00 p.m., petitioner appeared at the Bloomfield
police station and asked for his wallet.  (TT6 at 64, ECF No. 15-35, PageID.1246).
Petitioner was now driving a Chrysler Sebring and police maintained surveillance as
he began driving west across the State.  (*Id.* at 23-36, 64-65, PageID.1236-39, 1246).

On May 19, 2008, at about 1:00 a.m., petitioner was stopped on M-6 south of
Grand Rapids, Michigan, after he made an erratic swerve across a cement gore near
the US-131 intersection.  Petitioner volunteered that he was a suspect in the
disappearance of his roommate.  He told Trooper Doug Carey that the last time that
he saw her she was walking down US-131 with a fifth of alcohol in her hand.  (TT6
at 125-128, ECF No. 15-36, PageID.1322-23).  While petitioner was stopped, a
tracking device was secured to his vehicle.  (*Id.* at 26, PageID.1237).

On May 19, 2008, at about 1:45 p.m., petitioner arrived unannounced at Carol

Warner's house in Grand Haven, Michigan.  She testified that she was petitioner's friend and that their relationship had been romantic in nature in the remote past. Petitioner's parents lived in Holland, about twenty miles distant from Grand Haven. Petitioner remained at Ms. Warner's residence until around 8:00 p.m.  Petitioner had arrived in a Chrysler Sebring convertible and he had left in a 1980 Ford Bronco that had been parked with a for sale sign on it about two blocks away from Ms. Warner's home.  Petitioner said he paid $800 for the Bronco.  Ms. Warner helped petitioner jockey vehicles and the Chrysler was left in the Meijer's parking lot.  It remained in the parking lot days thereafter.  Ms. Warner testified that she saw petitioner in Grand Haven on the morning of May 20, 2008.  He was driving the Bronco and had stopped at a gas station.  (TT7 at 168-97, ECF No. 15-37, PageID.1400-07).

It had been raining on the morning of the May 21, 2008, but around 10:30 a.m. there was evidence of fresh tire tracks where a vehicle had "seesawed back and forth in front of the DeJonge cabin."  Photographs were taken of the tire tracks and lab technicians were called to collect the evidence.  The police then followed the same tire tracks all the way to the North Trail area where they found latex gloves and garbage bags.  Those items had not been in that spot on May 19, 2008.  A little further down the road, about twenty or thirty feet off the trail, there was a depression under a cedar tree where the moss was torn and it appeared as if something had been stuffed into it.  The hole was now empty, but there were two garbage bags nearby.  A pair of latex gloves were found nearby about fifteen feet or so into the woods.  There were also tire impressions.  (TT12, at 67-107, ECF No. 15-42, PageID.1710-20).

On May 21, 2008, police in the Kalkaska area learned that petitioner had recently purchased a 1980 maroon Ford Bronco.  (TT12 at 67, ECF No. 15-42, PageID.1710).   A paint chip found on one of the latex gloves was a match for petitioner's Bronco.  The Bronco could not be eliminated as its source.  Petitioner's DNA was in the body hair found in that same latex glove.  (TT9 at 139-74, 239-40, 258, ECF No. 15-39, PageID.1525-34, 1550, 1555; TT10 at 249-50, ECF No. 15-40, PageID.1620-21).

On May 21, 2008, at approximately 7:00 p.m., petitioner was arrested in Lake County, Michigan, pursuant to a drug warrant.  He was driving the Ford Bronco and he was wearing plastic shopping bags on his feet underneath his socks and shoes. Petitioner had altered his appearance by shaving off his beard and changing his hairstyle.  When petitioner was arrested, he had his phone disassembled into three pieces.  Removing the battery in this manner would disable the GPS system.  (TT8 at 93-132, ECF No. 15-38, PageID.1452-62; TT12 at 99, 138, ECF No. 15-42, PageID.1718, 1728).

On May 22, 2008, Michigan State Police Trooper Chris Bush's cadaver dog found a female torso.  It had been completely covered with grass and brush.  The torso was found in a swampy area about 4-1/2 miles from petitioner's parents' cabin.  DNA tests confirmed that it was Sarah Wilson's torso, but police were unable to locate the other parts of her body.  Police had initially stopped in this area because a vehicle had pulled to the side of the road and left tire tracks.  Sarah Wilson's torso was found about fifty feet from that spot.  (TT8 at 150-62, 223-24, ECF No. 15-38, PageID.1467-

70, 1485; TT9 at 43-118, ECF No. 15-39, PageID.1501-20; TT10 at 249-50, ECF No. 15-40,  PageID.1620-21;  TT12  at  102-08,  ECF  No.  15-42,  PageID.1719-20). Petitioner's Ford Bronco could not be eliminated as a possible source of the tire tracks found in front of the cabin on May 21, 2008, as well as the tracks found where Sarah Wilson's torso was found the next day.  The tracks could only have been made by a vehicle  with  tires  eighteen  years  old  or  older.  (TT11,  at  123-34,  ECF  No.  15-41, PageID.1659).

David Start, M.D., a forensic pathologist, testified that Sarah Wilson's arms, legs, head, and most of her neck were missing.  A circular area of tissue around her right breast had been removed.  A large portion of her left breast had also been cut away in conjunction with the removal of her left arm.  One of the potential reasons for such dismemberment would be to make identification difficult.  In accordance with the trial court judge's earlier rulings excluding a number of photographs, portions of Dr. Start's testimony were presented with support from a diagram.  So much of Sarah Wilson's body was missing that Dr. Start had to describe her death as homicide by undetermined means.  Dr. Start stated that he was comfortable with an estimate that the date of Sarah Wilson's death was on or about May 9, 2008, and that is the date on her death certificate.  Ms. Wilson's torso had been relatively well preserved by the cold temperature and the environment where it had been found.

With regard to wounds that Sarah Wilson sustained while she was still alive, Dr. Start testified that the bruises found on the torso were consistent with being struck with significant force in at least three separate blows with a hard, elongated

object.  The wounds were consistent with those that would have been made by blows delivered with the baseball bat size piece of wood that had Sarah Wilson's DNA on it.

 Dr. Start opined that the removal of Ms. Wilson's head and limbs and other incisions were made after she died.  If these injuries had been inflicted while she was alive, there would have been bleeding into the tissue.  The clean edges were consistent with postmortem dismemberment.  There was nothing in the manner in which the head and limbs were removed that suggested that it had been done by animals. Where bones had been cut, it appeared to have been accomplished by using a hacksaw or similar fine-toothed instrument.  The absence of lividity, "the settling of blood that occurs after death," was consistent with Sarah Wilson being dismembered relatively close to the time of her death.  Her blood alcohol content was .24 percent and she had liver cirrhosis.  She had a trace amount of lithium in her system, a drug used to treat bipolar disorder.  (TT11 at 171-241, ECF No. 15-41, PageID.1671-88; TT12 at 112, ECF No. 15-42, PageID.1721).

Samuel Ellis testified that, during a card game in jail, petitioner told him that "[h]e chopped his girl up and got rid of her."  Petitioner told Mr. Ellis not to say anything.  (TT7 at 199-250, ECF No. 15-37, PageID.1408-1421).

On October 5, 2009, the attorneys presented their closing arguments.  The prosecutor argued that he had presented evidence that showed beyond a reasonable doubt that petitioner was guilty of the crimes of first-degree premeditated murder and mutilation of a dead body.  (TT16 at 5-64, ECF No. 15-46, PageID.1853-68). Petitioner's attorney argued that the prosecution had not carried its burden of proof,

that Sarah Wilson was an alcoholic and bipolar, that other evidence put Ms. Wilson with other people outside the timeframe that she was with petitioner, and that petitioner never made the statement in the Oakland County Jail indicating that he killed and cut up his girlfriend.  (TT16 at 65-101, ECF No. 15-46, PageID.1868-77).  The prosecutor then presented his rebuttal.  (TT16 at 101-130, ECF No. 15-46, PageID.1877-85).

The trial court judge delivered the jury instructions.  (TT16 at 136-56, ECF No. 15-46, PageID.1886-91).  Among other things, the jury was instructed as follows:

> Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law.  You must not let sympathy or prejudice influence your decision.  As jurors you must decide what the facts of this case are.  This is your job and no one else's.  You must think about all the evidence and then decide what each piece of evidence means and how important you think it is.  This includes whether you believe what each witness said.  What you decide about any fact in this case is final.

(*Id.* at 136, PageID.1886).  The jury was once again reminded that the "lawyers statements and arguments are not evidence."  (*Id.* at 138, PageID.1887).  The jury also received the judge's instruction that petitioner was not on trial for a drug charge and that the jury must not convict petitioner based on a belief that he was likely to commit crimes or was guilty of other bad conduct.  (*Id.* at 143, PageID.1888).

On October 5, 2009, the jury returned its verdict finding petitioner guilty of first-degree premeditated murder of Sarah Wilson and mutilation of her dead body.  (TT16 at 161-63, ECF No. 15-46, PageID.1892-93).  On November 6, 2009, petitioner was sentenced as previously indicated.  (ECF No. 15-47; Judgment of Sentence Commitment to Department of Corrections, ECF No. 15-49, PageID.1970).

## II.    Subsequent Proceedings

Petitioner's appellate counsel raised the issues now appearing as Grounds I
and II of petitioner's habeas corpus petition:  ineffective assistance of trial counsel by
failure to object to testimony by the government's DNA expert and insufficiency of
the evidence to support the jury's verdict finding petitioner guilty of first-degree
premeditated murder.  (ECF No. 15-49 at PageID.1927).  Petitioner raised a third
issue claiming that the trial court judge had committed error her rulings regarding
certain privileged records.[4]  (ECF No. 15-49, PageID.1974-77).  On June 5, 2012, the
Michigan Court of Appeals found that all the arguments raised on direct appeal were
meritless and affirmed petitioner's convictions and sentence.  (Op., ECF No. 15-49,
PageID.1912-21).

Petitioner sought leave to appeal.  On January 25, 2013, the Michigan
Supreme Court denied petitioner's application for leave to appeal.  (ECF No. 15-50,
PageID.2092).

Petitioner filed a motion for relief from judgment raising the remaining
grounds found in his habeas corpus petition.  (ECF No. 15-52; 15-53).  On
October 13, 2014, Judge Allen denied petitioner's motion for relief from judgment for
lack of merit.[5]  (Opinion & Order, ECF No. 15-56).

Petitioner filed a delayed application for leave to appeal to the Michigan Court

---

[4] Petitioner's arguments corresponding to this issue appear in Ground VII of his
habeas corpus petition.
[5] Page fifteen of the Opinion and Order denying petitioner's motion for relief from
judgment was inadvertently omitted from this section (ECF No. 15-56), but it appears
elsewhere in the Rule 5 materials.  (*See* ECF No. 15-58, PageID.3006).

of Appeals.  (ECF No. 15-57, PageID.2830-53).  On May 4, 2015, the Michigan Court of Appeals denied petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (ECF No. 15-57 at PageID.2829).

Petitioner sought review in Michigan's highest court.  On July 26, 2016, the Michigan Supreme Court denied petitioner's application for leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (ECF No. 15-58, PageID.2879).

On August 4, 2016, petitioner filed his habeas corpus petition.  (ECF No. 1).

## Discussion

## I.    Assistance of Counsel

Petitioner claims numerous instances of ineffective assistance of trial and appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v.*

-29-

*Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Michigan's courts rejected all petitioner's claims of ineffective assistance of counsel for lack of merit.  Because the Michigan courts decided petitioner's claims of ineffective assistance of counsel on their merits, their decisions must be afforded deference under AEDPA.  *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102.  To receive habeas relief, petitioner must demonstrate that the state court's decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington.  See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decisions applied *Strickland* incorrectly.  Rather, petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012).  This creates a "high burden" for petitioner.  *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013).  "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial

review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."
*Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. 1372, 1375-77 (2015);
*Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the
habeas court is "whether there is any reasonable argument that counsel satisfied
*Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see
McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015).  Petitioner must show that the
state court's ruling on the claim being presented in federal court was "so lacking in
justification that there was an error well understood and comprehended in existing
law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S.
Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v.
Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

     A.    <u>Trial Counsel</u>

         1.    Failure to Object to DNA Expert's Testimony

In Ground I, petitioner argues that he was denied effective assistance of trial
counsel, in violation of his Sixth Amendment rights, when counsel failed to object to
testimony by the prosecution's DNA expert that the DNA profile of muscle tissue
taken from the torso was consistent with a profile of an offspring of the victim's
parents.  He argues that counsel made a serious mistake by not objecting to the
testimony where no statistical analysis was presented to support the witness's
testimony.  (ECF No. 1 at PageID.6, 30, 37-38; Reply Brief at 7-10, ECF No. 18,
PageID.3355-58).

The Michigan Court of Appeals rejected petitioner's claim of ineffective
assistance of counsel.  Counsel's strategy of "focus[ing] on establishing reasonable

doubt whether [petitioner] was responsible for the victim's death and whether there was evidence of a premeditated killing" did not fall outside the wide range of reasonable professional conduct.  (Op. at 4, ECF No. 15-49, PageID.1915).  The Court of Appeals noted that defense counsel had an opportunity to explore DNA issues with an appointed expert before trial to prepare for cross-examination.  It was "apparent that the challenged evidence was not crucial to a critical issue at trial.  The challenged evidence was only relevant to the identification of the recovered torso as the victim." (*Id.*).  "The defense did not seriously contest that the recovered torso belonged to the victim or that the victim had been killed."  (*Id.*).

Further, the Michigan Court of Appeals, citing "overwhelming circumstantial evidence," found that petitioner suffered no prejudice.  (*Id.* at 5, PageID.1916).

I find that petitioner has not shown that the decision of the Michigan Court of Appeals rejecting this claim of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).  Ground I does not provide a basis for habeas corpus relief.

### 2.    Lack of Preparation

Ground XIII is petitioner's argument that he was denied the effective assistance of counsel by his attorney's failure to do proper investigations, both factual and legal, adequate for pre-trial motions, research of, and interviews of, witnesses; analysis and preparation of all substantial defenses; and prepare for known legal

arguments to be presented.[6]  (ECF No. 1, PageID.10, 63-64; MRJ Brief at 107-18, ECF No. 15-52 at 2408-19; Reply Brief at 57-59, ECF No. 18, PageID.3404-06).

The trial court judge rejected all the arguments found within Ground XIII for lack of merit when she denied petitioner's motion for relief from judgment.  (Opinion & Order at 13, ECF No. 15-56, PageID.2826).   Among other things, Judge Allen rejected petitioner's arguments with regard to the cross-examination of April Bushman:

> A separate record made outside the presence of the jury indicated that Defendant's attorney, Mr. Shumar, wanted to ask [Ms. Bushman] questions about why she was afraid of Defendant, and go into several prejudicial acts committed by him in the past.  The Court prohibited this line of questioning.  Counsel was not ineffective for keeping away from areas the Court forbade him to go. Counsel's performance was certainly not deficient under *Strickland v Washington*, 466 US 668 (1984).

(Opinion & Order at 13, ECF No.15-56, PageID.2826).

Judge Allen rejected petitioner's claims that his trial counsel had been ineffective in failing to ask Dr. Start additional questions during cross-examination:

> These questions range from the questionably relevant ("Could the bruises have been caused by a dirtbike or quad accident?") to the absurd ("What other reasons are there, other than murder, why a body may have been dismembered and concealed?").  This Court has no reason to think either that counsel's performance was deficient or that the result would have been different as a result of not asking these questions. *Strickland*, 466 US 668.

(Opinion & Order at 13, ECF No.15-56, PageID.2826).

Petitioner has not shown that the trial court's decision rejecting the claims of

---

[6] A portion of petitioner's Motion for Relief from Judgment (MRJ) Brief (ECF No. 15-52 at PageID.2255-70) lacks page numbers.  Where the MRJ Brief provides page numbers, they are included in citations.

ineffective assistance of counsel found in Ground XIII was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).

### 3.    Failure to Properly Litigate Petitioner's Statements

Ground XIV is petitioner's argument that he was denied his right to due process when police officers failed to provide him with *Miranda* warnings during custodial interrogations, and that he was denied constitutionally effective assistance of counsel when his attorney failed to properly raise the issues involved.  (ECF No. 1, PageID.10, 65; MRJ Brief at 119-23, ECF No. 15-52, PageID.2420-24; Reply Brief at 60-61, ECF No. 18, PageID.3407-08).

The trial judge rejected the arguments found in Ground XIV for lack of merit when she denied petitioner's motion for relief from judgment.  (Opinion & Order at 5-6, ECF No. 15-56, PageID.2818-19).  I find that petitioner has not carried his burden under 28 U.S.C. § 2254(d)(1).  Ground XIV does not provide a basis for habeas corpus relief.

### 4.    Failure to Ask Questions

In Ground XV, petitioner claims his counsel was ineffective in failing to investigate and ask questions about one of the defense theories.[7]  (ECF No. 1, PageID.10, 66; MRJ Brief at 124-29, ECF No. 15-52, PageID.2425-30; Reply Brief at

---

[7] The theory was possible "suicide or accidental death."  (MRJ Brief at 124, ECF No. 15-52, PageID.2425).

62, ECF No. 18, PageID.3409).

The trial court judge rejected the arguments found in Ground XV for lack of merit when she denied petitioner's motion for relief from judgment. (Opinion & Order at 13, ECF No. 15-56, PageID.2826). I find that petitioner has not carried his burden under 28 U.S.C. § 2254(d)(1). Ground XV does not provide a basis for habeas corpus relief.

### 5. Failure to Request a Bill of Particulars

Ground XVI is petitioner's claim that his counsel was ineffective in failing to request a bill of particulars following the preliminary examination, despite the lack of clarity regarding the cause and manner of the alleged victim's death. (ECF No. 1, PageID.10, 68; MRJ Brief at 130-32, ECF No. 15-52, PageID.2431-33; Reply Brief at 63-64, ECF No. 18, PageID.3410-11).

The trial court judge rejected petitioner's argument for lack of merit, noting both that Michigan law does not require a prosecutor to charge a murder with particularity, and the futility of a bill of particulars, given the lack of particulars concerning the victim's death. (Opinion & Order at 13-14, ECF No. 15-56, PageID.2826-27). As previously noted, petitioner was tried on a charge of open murder under MICH. COMP. LAWS § 767.71, which allows a defendant to be convicted of first degree or second degree murder or manslaughter, depending on the proofs.

Ground XVI does not provide a basis for habeas corpus relief. Petitioner has not shown that the trial court's decision rejecting his claim of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States"
under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).

6.    Clothing Worn by Prisoner Witnesses

In Ground XVII, petitioner claims that his attorney was ineffective in failing
to request that inmate defense witnesses be dressed out, rather than appearing in
prison garb.  (ECF No. 1, PageID.10, 69; MRJ Brief at 133-34, ECF No. 15-52 at
PageID.2434-35; Reply Brief at 65, ECF No. 18, PageID.3412).

Judge Allen rejected petitioner's argument for lack of merit.  None of the
witnesses in question were on trial and none of the witnesses were entitled to a
presumption of innocence.  (Opinion & Order at 14, ECF No. 15-56, PageID.2827).

In *Estelle v. Williams*, 425 U.S. 501, 503-05 (1976), the Supreme Court held
that, in light of the presumption of innocence in favor of the accused under the
Fourteenth amendment, the State cannot compel an accused to stand trial before a
jury while dressed in identifiable prison clothes.  The Supreme Court "has never
ruled[, however,] that the prohibition on compelling a defendant to wear prison garb
or appear in shackles applies to witnesses."  *Pippen v. Curtin*, No. 2:11-cv-13980, 2014
WL 1344499, at *12 (E.D. Mich. Apr. 4, 2014).   "[D]efendants are not entitled to a
presumption that their witnesses are innocent — and a convicted witness is not
entitled to such a presumption.  Simply put, the Supreme Court has never held that
the Constitution prohibits a witness from being compelled to testify in prison garb or
visible restraints."  *Id.* (collecting cases).

Petitioner cites *Harrington v. California*, 395 U.S. 250 (1969) (MRJ Brief at

-36-

134, ECF No. 15-52 at PageID.2435), but that case had nothing to do with clothing worn by a witness.  In *Harrington*, the Supreme Court addressed a question of harmless error in the admission of a co-defendant's confession.  395 U.S. at 252.  The circuit court cases cited by petitioner (MRJ Brief at 133-34, ECF No. 15-52 at PageID.2434-35; Reply Brief at 65, ECF No. 18, PageID.3412) cannot provide a basis for habeas corpus relief.  *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *see also Stewart v. Trierweiler*, 867 F.3d 633, 641 (6th Cir. 2017) ("[C]ircuit precedent does not constitute 'clearly established Federal law' and therefore cannot form the basis for habeas relief under AEDPA.") (citation and quotations omitted).

Petitioner has not shown that the trial court's decision rejecting his claim of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).  Ground XVII does not provide a basis for habeas corpus relief.

### 7.    Failure to File a Motion to Suppress

In Ground XVIII, petitioner claims that his attorney ineffectively failed to file a motion to suppress the May 15, 2008, search of the DeJonge family cabin, arguing both that there was a lack of probable cause and the absence of any articulated crime having been or being committed.  (ECF No. 1, PageID.10, 69; MRJ Brief at 135-42, ECF No. 15-52, PageID.2436-43; Reply Brief at 66-68, ECF No. 18, PageID.3413-15).

Judge Allen rejected this argument for lack of merit.  (Opinion & Order at 15, ECF No. 15-58, PageID.3006).  The judge noted that petitioner had actually cited his attorney's suppression motion and he had attached a copy of the motion as an Exhibit

to his motion for relief from judgment.  (ECF No. 15-53, PageID.2638-42).  "Over forty motions in limine were filed in this case, and many of them dealt with suppression and were ruled on by this Court, including the motion to suppress evidence from his parent[s'] cabin.  Defendant's issue is without merit."  (Opinion & Order at 15, ECF No. 15-58, PageID.3006).

Petitioner has not shown that the trial court's decision rejecting his claim of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review. 28 U.S.C. § 2254(d)(1). Ground XVIII does not provide a basis for habeas corpus relief.

8.    Failure to Object

In Ground XIX, petitioner claims that his lawyer was ineffective in failing to object, correct, or rebut incorrect prejudicial testimony or comments made by the prosecution and its witnesses.  (ECF No. 1, PageID.10, 70-71; MRJ Brief at 143-52, ECF No. 15-52, PageID.2444-53; Reply Brief at 69-70, ECF No. 18, PageID.3416-17).

The trial judge rejected all the arguments found in Ground XIX for lack of merit when she denied petitioner's motion for relief from judgment.  (Opinion & Order at 15, ECF No. 15-58, PageID.3006).  Petitioner has not carried his burden under 28 U.S.C. § 2254(d)(1).  I find that Ground XIX does not provide a basis for habeas corpus relief.

B.    Appellate Counsel

In Grounds XXXVI and XXXVII, petitioner claims that he was denied the

effective assistance of appellate counsel when his attorney failed to raise the issues that he raised in his motion for relief from judgment.  (ECF No. 1, PageID.10, 88-90; MRJ Brief at 212-17, ECF No. 15-52, PageID.2513-18; Reply Brief at 91-92, ECF No. 18, PageID.3438-39).

It is well understood that where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  It is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did

present." *Id.*

Because Michigan's courts rejected petitioner's claims of ineffective assistance of appellate counsel for lack of merit, he faces the significant additional hurdle imposed by 28 U.S.C. § 2254(d).  The trial judge found that the issues that petitioner raised in his motion for relief from judgment were not clearly stronger than the issues raised by appellate counsel.  The issues that petitioner raised in his motion for relief from judgment were meritless and appellate counsel was not ineffective for failure to raise those issues.  (Opinion & Order at 16, ECF No. 15-56, PageID.2828).

I find that Grounds XXXVI and XXXVII do not provide a basis for habeas corpus relief.  Petitioner has not shown that the trial court's decision rejecting all his claims of ineffective assistance of appellate counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).

## II.    Sufficiency of the Evidence

In Ground II, petitioner claims that his due process rights were violated because the evidence was insufficient to support the jury's verdict finding him guilty of first-degree murder.  (ECF No. 1 at PageID.7, 30, 38-42; Reply Brief at 11-12, ECF No. 18, PageID.3359-60).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim.  Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential."  *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA.  *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008).  Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*.  *See Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015).  Review "is limited to determining whether the evidence was so

overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x. 431, 436 (6th Cir. 2007).  This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534.  "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).  In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).  Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.  Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard.  It found that there was sufficient evidence of premeditation to support the jury's verdict finding petitioner guilty of first-degree premeditated murder.  (*See* Op. at 5-7, ECF No. 15-49, PageID.1916-18).

I find that Ground II does not provide a basis for habeas corpus relief.  The

decision of the Michigan Court of Appeals upholding the sufficiency of the evidence to support petitioner's first-degree premeditated murder conviction was not an unreasonable application of the *Jackson v. Virginia* standard.

## III.    Public Trial

In Ground III, petitioner argues that he was denied his constitutional right to a public trial.  (ECF No. 1 at PageID.9, 42-43; MRJ Brief at 4-8, ECF No. 15-52, PageID.2255-60, 2315-22; Reply Brief at 12-33, ECF No. 18, PageID.3360-3380).

The Sixth Amendment provides that a criminal defendant "shall enjoy the right to a ... public trial."  U.S. CONST. amend. VI.  This right is made applicable to the States through the Fourteenth Amendment.  *See Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968).  "[T]he Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors."  *Presley v. Georgia*, 558 U.S. 209, 213 (2010) (*per curiam*).  "While the accused does have a right to insist that the *voir dire* of the jurors be public, there are exceptions to this general rule."  *Id.*

The trial court rejected the arguments found in Ground III for lack of merit, thus petitioner has the additional burdens imposed under 28 U.S.C. § 2254(d) to overcome.  Judge Allen recognized petitioner's right to a public trial and she identified the compelling reason for conducting a portion of *voir dire* in chambers was to preserve petitioner's right to a fair trial.  (*See* Opinion & Order at 7-8, ECF No. 15-56, PageID.2820-21).  Further, the judge noted the absence of any objections during the entire course of proceedings and the absence of prejudice to petitioner.  (*Id.* at 8-9, PageID.2821-22).  Judge Allen's analysis warrants inclusion here:

In this case, Defendant moved for a change of venue claiming a jury could not be selected due to pretrial publicity. The Court wanted to be careful that jurors who may have heard about the case would not taint the entire venire.

The trial transcripts from September 14-16, 2009, show that individual jurors who had heard about the case were called into chambers to explain what they knew or had heard about the case. Attorneys for both sides were present. These interviews could not have been conducted in open court due to the risk of tainting the entire venire. Furthermore, the prosecutor stated on the record that the Court was very liberal with granting challenges for cause and that "he was hard pressed to think of any prospective juror that one of the attorney's wanted excused that [the Court] didn't agree [to excuse]." Trial Tr. Sept. 17, 2009, p. 44. The prosecutor also noted that both sides had peremptory challenges remaining after jury selection was complete. *Id.* Defendant and his attorney were present, and there were no objections either to these statements or to the *voir dire* process generally.

Based on the record, this Court finds no evidence that the process seriously affected the fairness or integrity of the trial.

(Opinion & Order at 8-9, ECF No. 15-56, PageID.2821-22).

In light of the above-referenced findings and the Supreme Court's decision in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), petitioner cannot satisfy his burden under 28 U.S.C. § 2254(d).

In *Weaver,* the Supreme Court considered a similar claim of structural error in violation of the defendant's Sixth Amendment right to a public trial by closing *voir dire* to the public. Defense counsel neither objected to the closure at trial nor raised the issue on direct review. *Id.* at 1905, 1907. The Supreme Court found that "the fact that the public-trial right is subject to exceptions suggest[ed] that not every public-trial violation result[ed] in fundamental unfairness." *Id.* at 1909. The Court had never held "that a public-trial violation renders a trial fundamentally unfair in every case. *Id.* at 1910. "[W]hile the public trial right is important for fundamental

reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." *Id.* The Supreme Court held that when a defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective assistance of counsel claim, the burden remained on the petitioner to show prejudice under *Strickland*, being "a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure." *Id.* at 1912. Petitioner has not come close to satisfying his burden under 28 U.S.C. § 2254(d).

Petitioner's claim fares no better when it is considered as a stand-alone issue raised in a motion for relief from judgment because there is no clearly established Supreme Court precedent in that context. The Supreme Court emphasized in *Weaver v. Masachusetts*, that it had granted *certiorari* specifically and only in the context of trial counsel's failure to object to the closure of the courtroom during jury selection and the issue was neither preserved or raised on direct appeal, but was later raised in a claim alleging ineffective assistance of counsel. 137 S. Ct. at 1907.

Petitioner has not carried his burden under 28 U.S.C. § 2254(d). I find that Ground III does not provide a basis for habeas corpus relief.

## IV.    Alleged Errors by the Trial Court

### A. Denial of Motion to Suppress

Ground IV is petitioner's claim that he was denied his right to a fair trial and to due process by the trial court's denial of a motion to suppress all of the gruesome and prejudicial photographs. (ECF No. 1, PageID.10, 44-45; MRJ Brief at 14-18, ECF No. 15-52, PageID.2262-64, 2325-29; Reply Brief at 34-35, ECF No. 18, PageID.3381-

82).

Petitioner was charged with the crime of mutilation of a dead body.  Judge Allen conducted a pretrial hearing on petitioner's attorney's motion to suppress photographs.  (ECF No. 15-29).  The judge explained on the record why specific photographs would be permitted and why others would be excluded because they were more prejudicial than probative.  (*Id.* at PageID.947, 956).  When Judge Allen denied petitioner's motion for relief from judgment, she found no reason to disturb her earlier evidentiary rulings.  (Opinion & Order at 5 n.2, ECF No. 15-56, PageID.2818).

Whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see* 28 U.S.C. § 2254(a).

Petitioner's reliance on *Payne v. Tennessee*, 501 U.S. 808 (1991) (Reply Brief at 35, ECF No. 18, PageID.3382) is misplaced.  In *Payne*, the Supreme Court addressed the issue of whether "the Eighth Amendment bars the admission of victim impact evidence during the penalty phase of a capital trial."  501 U.S. at 811.  The Court held:

> [I]f the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar.  A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death

penalty should be imposed.  There is no reason to treat such evidence differently than other relevant evidence is treated.

*Id.* at 827.  Petitioner did not face the death penalty and there was never a death penalty phase of his trial.

Petitioner has not carried his burden under 28 U.S.C. § 2254(d).  I find that Ground IV does not provide a basis for habeas corpus relief.

B. <u>Appointment of Experts</u>

Ground V is petitioner's argument that he was denied a fair trial and/or due process by the trial court's denial of his requests for additional funds for experts. (ECF No. 1, PageID.10, 46-47; MRJ Brief at 19-24, ECF No. 15-52, PageID.2264-67, 2330-35; Reply Brief at 36, ECF No. 18, PageID.3383).

Judge Allen rejected the arguments found in Ground V for lack of merit.  "The mere possibility that an expert would be helpful is not sufficient."  (Opinion & Order at 9, ECF No. 15-56, PageID.2822).  Further, the judge noted that petitioner had received the expert assistance provided by Strand Labs.  (*Id.*).

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that, "when certain threshold criteria are met, the State must provide an indigent defendant with access to a mental health expert who is sufficiently available to the defense and independent from the prosecution to effectively 'assist in evaluation, preparation, and presentation of the defense.' "  *McWilliams v. Dunn*, 137 S. Ct. 1790, 1793 (2017) (quoting *Ake*, 470 U.S. at 83).  Shortly after deciding *Ake*, the Supreme Court declined to extend *Ake*'s holding to the appointment of a criminal investigator, fingerprint expert, and ballistics expert and declined to address the question of "what if any

showing would [entitle] a defendant to [private non-psychiatric] assistance" as a matter of federal constitutional law." *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985).

Petitioner cannot possibly satisfy his burden under 28 U.S.C. § 2254(d) because the Supreme Court has never extended the rule in *Ake* to apply to the appointment of experts on issues other than a defendant's sanity. *See McGowan v. MacLaren*, No. 1:13-cv-904, 2017 WL 3175767, at *12 (W.D. Mich. Mar. 31, 2017); *Davis v. Woods*, No. 2:14-cv-11015, 2017 WL 3616486, at *13 (E. D. Mich. Aug. 23, 2017) ("Because there is no clearly established Supreme Court precedent requiring the appointment of a non-psychiatric expert, petitioner is not entitled to habeas relief."); *Griffes v. Rivard*,  No. 11-cv-14227, 2016 WL 7188096, at *8-9 (E.D. Mich. Dec. 12, 2016) (same).

Ground V does not provide a basis for habeas corpus relief.

C.  Dr. Start's Testimony

In Ground VI, petitioner claims that he was denied a fair trial and/or due process because the trial court allowed Dr. Start to testify on multiple issues, where his opinion was based on speculation, conjecture, unreliable facts and data, and was not based on reliable scientific methodology.  (ECF No. 1, PageID.10, 48-50; MRJ Brief at 25-35, ECF No. 15-52, PageID.2267-70, 2336-46; Reply Brief at 37-40, ECF No. 18, PageID.3384-87).

The trial court judge rejected petitioner's argument:

Defendant contends that Dr. Start was speculating as to the cause of death when he testified that the cause of death was homicide by

unknown means.  Defendant alleges that he was prejudiced by this, and that he was prevented from questioning the doctor about accident or suicide.

Quite frankly, it is completely ridiculous to suggest that the death in this case was caused by accident or suicide, given that the body was completely mutilated and that no body parts other than the torso were recovered.  Dr. Start was qualified as an expert, and his conclusion that this death was the result of homicide was not speculation.

(Opinion & Order at 9-10, ECF No. 15-56, PageID.2822-23).

Petitioner invokes *Daubert v. Merrill Dow Pharm., Inc*, 509 U.S. 579 (1997) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  (ECF No. 1 at PageID.48; MRJ Brief at 26, ECF No. 15-52, PageID.2337; Reply Brief at 38-40, ECF No. 18, PageID.3385-87).   Both Supreme Court's decisions addressed the standard for admitting expert scientific testimony in trials conducted under the Federal Rules of Evidence.  *See Thomas v. Jackson*, No. 1:17-cv-476, 2017 WL 2608753, at *7 (W.D. Mich. June 16, 2017) ("In both *Daubert* and *Kumho Tire*, the Supreme Court held only that, in federal courts, applying Rule 702 of the Federal Rules of Evidence, opinion testimony was required to meet the standard set forth in those cases.").

Petitioner has not carried his burden under 28 U.S.C. § 2254(d).  "The Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure violates due process."  *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017).  "The Supreme Court did not set a constitutional floor for the reliability of scientific evidence in *Daubert*, and screening evidence through *Daubert*'s standards is not constitutionally required."  702 F. App'x at 321 (citation omitted); *see Smith v. Ross Corr. Inst.*, No. 16-3157, 2017 WL 3623939, at *1 (6th Cir. July 3, 2017) ("The district court properly

-49-

concluded that Smith was not entitled to relief on his claim that the admission of the testimony violated *Daubert* because *Daubert* concerns only the Federal Rules of Evidence and not state evidentiary rules."); *Thomas v. Jackson*, 2017 WL 2608753, at *7 ("At no time has the Supreme Court held that *Daubert* and *Kumho Tire* provide the standard for evaluating whether an admission of evidence violates due process.").

Ground VI does not provide a basis for granting habeas corpus relief.

D. Right to Present A Defense

Ground VII is petitioner's argument that he was denied his constitutional right to present a defense. (ECF No. 1, PageID.10, 51-52; MRJ Brief at 36-49, ECF No. 15-52, PageID.2347-60; Reply Brief at 42-45, ECF No. 18, PageID.3389-92).

The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The right is derived from the Sixth Amendment rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process law.").

The Supreme Court has repeatedly recognized, however, that the right to present a defense is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth

Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295. The Supreme Court has further explained:

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).

The trial court rejected petitioner's argument that he was deprived of a defense based on the victim's violent and provocative character traits:

> Michigan Rule of Evidence 404(a)(2) does permit admission of character evidence of a homicide victim. However, the victim's character is admissible for purposes of showing that [he or she was] the first aggressor, or that the defendant acted in self-defense. *See People v Harris*, 458 Mich 310; 583 NW2d 680 (1998) ("Because an important theory of defendant's case was self defense, character evidence tending to show the victim's violent character should have been admitted ..."). In this case, the primary defense was alibi, specifically, that victim had left Defendant's vehicle and went off with two unknown men, and defendant returned to the Kalkaska cabin alone. Self-defense was not argued. Therefore, barring admission of evidence of the victim's violent character was appropriate.

(Opinion & Order at 10, ECF No. 15-56, PageID.2823).

I find that Ground VII does not provide a basis for habeas corpus relief. Petitioner has not shown that the trial court's ruling violated his right to present a defense. Petitioner certainly has not demonstrated that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States"; nor has he shown that it was "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

E.  Evidentiary Rulings

Ground VIII is petitioner's argument that the trial court violated his right to a fair trial and/or due process through its rulings regarding Common Ground Sanctuary records and other rehab/medical information that the judge reviewed *in-camera*.  (ECF No. 1, PageID.10, 53; MRJ Brief at 60-65, ECF No. 15-52, PageID.2361-66; Reply Brief at 46-47, ECF No. 18, PageID.3393-94).

The Michigan Court of Appeals rejected the arguments found in Ground VII for lack of merit.  (*See* Op. at 7-10, ECF No. 15-49, PageID.1918-21).

Whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. at 67-68; *see* 28 U.S.C. § 2254(a).

Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting the arguments found in Ground VII was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

F.  Bad Acts Evidence

In Ground IX, petitioner claims that he was denied a fair trial and/or due

process by the trial court's admission of bad acts without formal notice to the defense
and court, and without adequate reasons established on the record.  (ECF No. 1,
PageID.10, 54-55; MRJ Brief at 66-76, ECF No. 15-52, PageID.2367-77; Reply Brief
at 48-51, ECF No. 18, PageID.3395-98).   Specifically, petitioner challenges the
admission of evidence regarding his arrest for possession of prescription drugs and
Ms. Bushman's testimony regarding his sexual conduct.

The trial court rejected petitioner's arguments.  The court found no error in the
admission of evidence regarding petitioner's arrest on May 15, 2008, for possession of
a prescription drug without a prescription:[8]

> [T]he issue of possession of prescription drugs was highly relevant to
> explaining the search of the vehicle and why [petitioner] was arrested
> in Oakland County and held in the jail.  During the search of the vehicle,
> several of the victim's belongings were found.  It was also mentioned
> repeatedly by the officers who interviewed him.  It has no tendency to
> show behavior in conformity therewith, as the crime charged in the
> instant case was murder, not possession of drugs.  To the extent that it
> is argued it shows tendency to engage in criminal behavior, the Court
> notes that it was a very small amount of pills, and [petitioner] had a bad
> back.  There was no evidence or insinuation that he was a drug abuser
> or a dealer.  The arrest was contemporaneous with all of the actions

---

[8] Judge Allen explained during a pretrial hearing why she would not be excluding
evidence of petitioner's arrest on an Oakland County charge related to possession of
drugs.  When petitioner was arrested on May 21, 2008, he was arrested on a warrant
based on that charge.  Excluding evidence regarding the drug charge and the context
it provided for why petitioner was in the Oakland County Jail could easily do
petitioner more harm than good because it would likely provoke speculation by jurors
regarding other reasons why petitioner was being held in the jail.  (ECF No. 15-30 at
PageID.962-63).   Further, Judge Allen planned to and did deliver a cautionary
instruction regarding evidence related to the drug charge.  Jurors are presumed to
follow their instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Cooper
v. Haas*, No. 17-1235, 2018 WL 1224451, at *3 (6th Cir. Jan. 9, 2018) ("[T]he trial
court instructed the jury that it could not convict [petitioner] 'solely because you think
he is guilty of other bad conduct,' and jurors are presumed to follow the instructions
given to them.").

testified to in this case, and therefore highly relevant to the facts of the case. Rule 404 does not require exclusion of otherwise admissible evidence; it only prohibits its *use* to prove that a person acted in conformity therewith.

(Opinion and Order at 11, ECF No. 15-56, PageID.2824).

The trial court also found no error in the admission of April Bushman's testimony regarding her interactions with petitioner. When Ms. Bushman was asked whether petitioner had ever tried to make their relationship more than just two friends, Ms. Bushman stated that, on a couple occasions, she would be "out of it" and petitioner would come to her bed and "dry hump [her] back." (*Id.* at 11, PageID.2824). There was no objection. The evidence "was not offered to show [petitioner's] propensity to commit sexual misconduct; it was offered to demonstrate [petitioner's] state of mind regarding the relationship between himself and April Bushman." (*Id.*). It was relevant to understanding the nature of the relationship between Ms. Bushman, petitioner and Sarah Wilson. (*Id.*). Further, the court found that the admission of evidence regarding his drug arrest and interaction with Ms. Bushman did not result in any prejudice to petitioner. (*Id.* at 12, PageID.2825).

As previously noted, purported violations of state law in evidentiary rulings do not provide a basis for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. at 67-68.

Petitioner cannot satisfy his burden under 28 U.S.C. § 2254(d). "[T]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Miller v. Jackson*, No. 17-

1921, 2018 WL 741695, at *2 (6th Cir. Jan. 10, 2018); *Cooper v. Haas*, No. 17-1235, 2018 WL 1224451, at *3 (6th Cir. Jan. 9, 2018) ("[T]he admission of other acts evidence was not contrary to, nor did it involve an unreasonable application of, clearly established federal law because '[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'") (quoting *Bugh*, 329 F.3d at 512).

I find that Ground IX does not provide a basis for habeas corpus relief.

G.    Gatekeeping

In Ground X, petitioner argues that he was denied a fair trial and/or due process when the trial judge abused her discretion as gatekeeper of material, admitting misleading and prejudicial testimony and comments submitted to the jury, against court rules and fundamental fairness.  (ECF No. 1, PageID.10, 56-57; MRJ Brief at 77-82, ECF No. 15-52 at PageID.2379-84; Reply Brief at 52, ECF No. 18, PageID.3399).  Petitioner argues that the prosecutor "worded some of his questions in a manner to elicit incorrect responses." (ECF No. 1 at PageID.56).  He also states that, in closing argument, the prosecutor called him a liar without any supporting testimony or evidence.  (*Id.* at PageID.57).

The trial court judge rejected petitioner's arguments for lack of merit when she denied his motion for relief from judgment.  (Opinion & Order at 12, ECF No. 15-56, PageID.2825).

Petitioner has not shown that the state court decision rejecting the Ground X was "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

H.  Illegal Arrest, Searches and Seizures

In Ground XI, petitioner claims that he was denied a fair trial and/or due process by the admittance of evidence obtained from illegal arrest(s) and searches. In the alternative, petitioner asserts that his attorney was ineffective by failing to research and effectively litigate the issues involved.  (ECF No. 1, PageID.10, 58-59; MRJ Brief at 83-104, ECF No. 15-52 at PageID.2385-2405; Reply Brief at 53-54, ECF No. 18, PageID.3400-01).

The trial judge rejected petitioner's arguments for lack of merit when she denied his motion for relief from judgment.  (Opinion & Order at 5-6, ECF No. 15-56, PageID.2818-19).

An illegal arrest does not provide a basis for habeas corpus relief from an ensuing conviction.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction).  The method by which a petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction.  *See Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinois*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at *1 (6th Cir. Feb. 1, 1990) ("petitioner's

arguments that his arrest was absent probable cause ... [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (citing *United States v. Crews*, 445 U.S. 463, 474 (1980)).  Accordingly, petitioner's claim of illegal arrest(s) cannot serve as a basis for habeas relief.

Petitioner's claims of illegal searches fare no better.  Habeas corpus review is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.* at 481-82.  In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72, 76 (6th Cir. 1986).

Petitioner does not satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a procedural mechanism that provides a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court applied the exclusionary rule to state criminal proceedings,

the Michigan courts applied it to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges. *See Good v. Berghuis*, 729 F.3d 636, 639-40 (6th Cir. 2013).

Petitioner has not shown that the state procedural mechanism failed. Because petitioner has failed to demonstrate either prong of the *Stone v. Powell* standard his claims of illegal search and seizure are barred on habeas review. I find that Ground XI does not provide a basis for habeas corpus relief.

I.  Audience Outburst

Ground XII is petitioner's claim that he was denied a fair trial and/or due process when the jury witnessed a prejudicial outburst from the gallery; and alternatively, that his counsel was ineffective in failing to request a mistrial. (ECF No. 1, PageID.10, 60-61; MRJ Brief at 105-06, ECF No. 15-52 at PageID.2406-07; Reply Brief at 55, ECF No. 18, PageID.3402).

The trial court rejected petitioner's argument for lack of merit:

> Defendant argues he is entitled to a mistrial because of an outburst that occurred during the trial. During testimony, decedent's father fainted in the gallery. Decedent's sister stood and yelled, pointing at the defendant "It's his fault! He killed my sister!" The jury was excused, a separate record made) and a curative instruction was given to the jury.

> Case law is clear that, where an outburst is unexpected, and the court gives a curative instruction, no mistrial is warranted. *People v Broom*, 50 Mich App 337, 341-42;213 NW2d 247, 249 (1973); *Collins v Berghuis*, unpublished opinion of the District Court for the Eastern District of Michigan, Southern Division, issued February 29, 2012 (Docket No.09-CV-10627).  Therefore, no reversible error occurred.

(Opinion & Order at 12-13, ECF No. 15-56, PageID.2825-26).

The Circuit Court authority cited by petitioner cannot provide a basis for habeas corpus relief.  *See* 28 U.S.C. § 2254(d)(1).  The three Supreme Court decisions cited by petitioner, *Morgan v. Illinois*, 504 U.S. 719 (1992) (ECF No. 1 at PageID.61); *Addonizio v. United States*, 405 U.S. 936 (1972) (Douglas J., dissenting) and *Moon v. Dempsey*, 261 U.S. 86 (1923) (MRJ Brief at 106, ECF No. 15-52, PageID.2407), had nothing to do with an audience outburst.

I find that petitioner has not carried his burden under 28 U.S.C. § 2254(d). Ground XII does not provide a basis for habeas corpus relief.

## V.    Prosecutorial Misconduct

In Grounds XX through XXXV, petitioner claims that instances of prosecutorial misconduct deprived him of a fair trial in violation of his rights under the Fourteenth Amendment's Due Process Clause.  (ECF No. 1, PageID.10, 72-87).

The scope of review in a habeas action regarding allegations of prosecutorial misconduct is narrow.  "Petitioner's burden on habeas review is quite a substantial one."  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).  This court does "not possess supervisory powers over state court trials."  *Id.*  "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority."  *Id.*  "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' " *Id.*

(quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (" '[T]he appropriate standard of review for ...a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' ") (quoting *Darden*, 477 U.S. at 181).  To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181; *see Parker v. Matthews*, 567 U.S. 37, 45 (2012); *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).

Because the trial court rejected all petitioner's claims for lack of merit (Opinion & Order at 12, ECF No. 15-56, PageID.2825), petitioner faces the significant additional hurdle of demonstrating that the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A. *Voir Dire*, Bad Acts, and Photographs

Ground XX is petitioner's claim that the prosecutor engaged in misconduct in allowing, and even encouraging, a portion of the *voir dire* to be conducted in-chambers and not in public court.  (ECF No. 1, PageID.10, 72; MRJ Brief at 153-55, ECF No. 15-52, PageID.2454-56; Reply Brief at 75, ECF No. 18, PageID.3422).  Ground XXI is petitioner's claim that the prosecutor improperly introduced bad acts evidence without prior notice to the defense and to the court.  (ECF No. 1, PageID.10, 73; MRJ

Brief at 156-59, ECF No. 15-52, PageID.2457-60; Reply Brief at 75-76, ECF No. 18, PageID.3422-23).  Ground XXVI is petitioner's claim that the prosecutor presented highly prejudicial photographs.  (ECF No. 1, PageID.10, 78; MRJ Brief at 180, ECF No. 15-52, PageID.2481; Reply Brief at 82, ECF No. 18, PageID.3429).

Petitioner's arguments were rejected for lack of merit.  (Opinion & Order at 10-12, ECF No. 15-56, PageID.2823-15).  The trial judge controls the manner in which *voir dire* is conducted and the admission of evidence, not the prosecutor.

I find that Grounds XX, XXI, and XXVI do not provide a basis for habeas corpus relief.  Petitioner has not shown that the state court's decision rejecting these grounds was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

B. <u>Subornation of Perjury</u>

In Ground XXII, petitioner claims that the prosecutor suborned perjury and misled the witnesses and jury as to the facts of the case.  (ECF No. 1, PageID.10, 74; MRJ Brief at 160-66, ECF No. 15-52, PageID.2461-67; Reply Brief at 77-78, ECF No. 18, PageID.3424-25).

The Fourteenth Amendment right to due process prohibits a state from the knowing and deliberate use of perjured evidence in order to obtain a conviction.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).  This claim encompasses use of testimony, whether elicited or left uncorrected, that the prosecutor knows or should know is

false.  *See Giglio v. United States*, 405 U.S. 150 (1972).  The presentation of perjured testimony, without more, does not rise to the level of a constitutional violation.  *See Briscoe v. LaHue*, 460 U.S. 325, 327 (1983).  "In order to establish prosecutorial misconduct for presenting false testimony, [petitioner] must show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew that it was false."  *Roby v. Burt*, No. 17-2043, 2018 WL 1176512, at *4 (6th Cir Feb. 14, 2018) (citing *Peoples v. Lafler*, 734 F.3d 503, 516 (6th Cir. 2013)).  " 'The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.' "  *Roby v. Burt*, 2018 WL 1176512, at *4 (quoting *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010)).

The trial court judge rejected petitioner's arguments in Ground XXII for lack of merit.  The judge observed that conflicting witness testimony "is relatively common at trials and is not the product of subornation of perjury."  (Opinion & Order at 12, ECF No. 15-56, PageID.2825).

Petitioner has not shown that the state court decision rejecting the arguments found in Ground XXII was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  I find that Ground XXII does not provide a basis for habeas corpus relief.

C.  Making Objections

In Ground XXIII, petitioner claims the prosecutor engaged in misconduct by objecting to defense counsel's motions for expert funds, and then arguing that the State's experts were unrebutted.  (ECF No. 1, PageID.10, 75; MRJ Brief at 167, ECF No. 15-52, PageID.2468; Reply Brief at 78, ECF No. 18, PageID.3425).  Petitioner refers to a portion of the prosecutor's closing argument where he described Dr. Start's testimony that the cause of Sarah Wilson's death as homicide by undetermined means as being unrebutted.  (MRJ Brief at 167, ECF No. 15-52, PageID.2468) (citing TT16 at 57, ECF No.15-46, PageID.1866).  Dr. Start did testify that the cause of Ms. Wilson's death was "homicide by undetermined means" (TT11 at 197, ECF No. 15-41, PageID.1678) and his expert testimony was unrebutted.

The trial court rejected petitioner's arguments in Ground XXIII for lack of merit when she denied petitioner's motion for relief from judgment.  (Opinion & Order at 12, ECF No. 15-56, PageID.2825).

I find that Ground XXIII does not provide a basis for habeas corpus relief. Petitioner has carried his burden under 28 U.S.C. § 2254(d).

D. <u>Police Misconduct</u>

In Ground XXVII, petitioner claims police misconduct in making illegal stops and conducting custodial interrogations, which he attributes to the prosecutor.  (ECF No. 1, PageID.10, 79; MRJ Brief at 181, ECF No. 15-52, PageID.2482; Reply Brief at 83, ECF No. 18, PageID.3430).

The trial court rejected petitioner's arguments in Ground XXII (Opinion & Order at 12, ECF No. 15-56, PageID.2825).

This ground is generally a repetition of earlier issues.  (MRJ Brief at 181, ECF No. 15-52, PageID.2482).  Petitioner's motion for relief from judgment contains a citation to the Supreme Court's decision in *Unites States v. Ash*, 413 U.S. 300, 321 (1973).  The Court's holding in *Ash* does not support Ground XXVII.  In *Ash*, the Court held that the Sixth Amendment does not grant an accused the right to have counsel present when the government conducts a post-indictment photographic display, containing a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender.

Petitioner has not carried his burden under 28 U.S.C. § 2254(d).  I find that Ground XXVII does not provide a basis for habeas corpus relief.

E. Prosecuting Petitioner

 In Ground XXVIII, petitioner claims that the prosecutor engaged in misconduct in bringing the prosecution without a cause of death determination, without proof that the remains were that of Sarah Wilson, and without proof beyond a reasonable doubt of defendant's guilt.  (ECF No. 1, PageID.10, 79; MRJ Brief at 182-90, ECF No. 15-52, PageID.2483-91; Reply Brief at 83-85, ECF No. 18, PageID.3430-32).

The trial court rejected petitioner's arguments in Ground XXVIII for lack of merit.  (Opinion & Order at 12, ECF No. 15-56, PageID.2825).  "DNA evidence showed the remains to be those of Sarah Wilson.  The state of the remains leave little doubt as to the criminality of the cause of the victim's death, and the state's expert witness testified that the cause of death was homicide.  The requirement of corpus delicti was

satisfied" (*Id.* at 15-16, ECF No. 15-56, PageID.2828; ECF No. 15-58, PageID.3006).

The jury determined that petitioner was guilty of first-degree premeditated murder in killing Sarah Wilson and of the mutilation of her dead body and his challenge to the sufficiency of the evidence has been rejected.  Petitioner has not carried his burden under 28 U.S.C. § 2254(d).  I find that Ground XXVIII does not provide a basis for habeas corpus relief.

F.  Closing Argument

The remaining grounds in the petition claim misconduct in various aspects of the prosecutor's closing argument.

1.    Rational Inferences from the Evidence

Ground XXIV is petitioner's argument that he was denied due process and/or a fair trial by the prosecutor arguing facts without sufficient evidence to support any logical or rational inference. (ECF No. 1, PageID.10, 76; MRJ Brief at 168-76, ECF No. 15-52, PageID.2469-77; Reply Brief at 79, ECF No. 18, PageID.3426).  Under this heading, petitioner lists thirteen instances where he believes that the prosecutor's closing argument was improper.  (MRJ Brief at 168-76, ECF No. 15-52, PageID.2469-77).

For example, the first instance concerns the prosecutor's argument related to the testimony provided by Coleen Auer-Lemke, the State's computer evidence technician, regarding the Internet searches that petitioner conducted using his work computer.  (*Id.* at 168, PageID.2469) (citing TT16 at 32, ECF No. 15-46, PageID.1860). Ms. Auer-Lemke, a computer forensic specialist, testified that a search of petitioner's

work computer revealed that, on May 11, 2008, petitioner was conducting Yahoo map searches through his work computer.  The maps were primarily aerial photos of the Kalkaska area, but also included other areas of the State.  Ms. Auer-Lemke was unable to determine whether these searches had been made from petitioner's workplace or remotely from some other location.  (TT12 at 158-77, ECF No. 15-42, 1733-37).  Joyce Weishaar, the human resources director for petitioner's former employer, testified that employees could access their work computer from off-site. (TT9 at 191, ECF No. 15-39, PageID.1538).  The prosecutor's argument that petitioner had been searching for places to hide or re-hide Sarah Wilson's body parts (TT16 at 32, ECF No. 15-46, PageID.1860) was a reasonable inference in light of the evidence presented at trial.

The trial court judge certainly was not obligated to accept petitioner's claims in his motion for relief from judgment that he "was starting to worry about Sarah because she did not show at her mother's," and the Internet searches "were for mushrooming locations, places to park [his] motorhome, possible camping areas, and so on."  (MRJ Brief at 169, ECF No. 15-52, PageID.2470).

The trial court rejected all petitioner's arguments in Ground XXIV for lack of merit when she denied petitioner's motion for relief from judgment.  (Opinion & Order at 12, ECF No. 15-56, PageID.2825).

I find that Ground XXIV does not provide a basis for habeas corpus relief. Petitioner has not shown that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

    2.      Vouching

In Ground XXXIII, petitioner claims that the prosecutor vouched for the credibility of his witnesses.  (ECF No. 1, PageID.10, 84; MRJ Brief at 203-05, ECF No. 15-52, PageID.2504-06; Reply Brief at 88, ECF No. 18, PageID.3435).  Ground XXXV is petitioner's claim that the prosecutor "declared and testified as from his own personal knowledge, 'He is guilty.' "  (ECF No. 1, PageID.10, 86; MRJ Brief at 207-11, ECF No. 15-52, PageID.2508-12; Reply Brief at 89, ECF No. 18, PageID.3436).

The trial court rejected petitioner's arguments for lack of merit.  (Opinion & Order at 12, ECF No. 15-56, PageID.2825).  The judge specifically noted petitioner's erroneous assumption "that the prosecutor's closing [argument] counts as 'testimony.' " (*Id.*).

Ground XXXV is based on taking fragments of the prosecutor's rebuttal out of context.  (MRJ Brief at 207, ECF No. 15-52, PageID.2508) (citing TT16 at 118, 130, ECF No.15-46, PageID.1882, 1885).  The argument on transcript page 118 was made in the context of the prosecutor arguing that his burden of proof did not include proving that petitioner's actions were reasonable.  (TT16 at 117-18, ECF No. 15-46, PageID.1881-82).  "There's nothing reasonable about this.  He murdered his friend.  That's not reasonable.  There's no reason to think that anything else is done correctly or reasonably.  He made many mistakes.  And the harder he got pushed, the more

mistakes he made." (*Id.* at 118, PageID.1882).  This argument was appropriate and it certainly did not deprive petitioner of a fair trial.

The same is true for the end of the prosecutor's rebuttal where he expressed his hope that he had presented the volume of evidence from a three-week trial in a manageable fashion, thanked the jurors for their attention, and asked the jury to "Find him guilty.  He is guilty." (TT16 at 129-30, PageID.1884-85).  The prosecutor was not testifying from his own personal knowledge that petitioner was guilty.  He was asking the jury, as the finder of fact, to return a verdict finding petitioner guilty.

With regard to XXXIII, the federal courts have generally recognized two types of objectionable vouching.  *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x. 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).  The first type impermissibly places the government's prestige behind the witness to bolster the witness's credibility.  *Francis*, 170 F.3d at 550.  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *Id.* at 551.  Neither type is at issue here.

Moreover, the Supreme Court has never recognized "vouching" as a constitutional-level claim.  "There is no 'clearly established Federal law, as determined by the Supreme Court of the United States' against 'vouching.' " *Vance*

*v. Berghuis*, No. 1:09-cv-137, 2013 WL 3161326, at *23 (W.D. Mich. June 20, 2013) (quoting 28 U.S.C. § 2254(d)(1) and citing *Parker v. Matthews*, 567 U.S. at 47-48).

I find that Grounds XXXIII and XXXV do not provide a basis for habeas corpus relief.  Petitioner has not shown that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

3.    Remaining Grounds

Petitioner's remaining grounds claiming prosecutorial misconduct do not warrant separate discussion.  In Ground XXV, petitioner claims that the prosecutor made improper comments regarding defense witnesses and the defense team.  (ECF No. 1, PageID.10, 77; MRJ Brief at 177-80, ECF No. 15-52, PageID.2478-81; Reply Brief at 80, ECF No. 18, PageID.3427).  Ground XXIX is petitioner's claim that the prosecutor elicited inadmissible testimony from April Bushman and misrepresented that testimony. (ECF No. 1, PageID.10, 80; MRJ Brief at 191-93, ECF No. 15-52, PageID.2492-94; Reply Brief at 85, ECF No. 18, PageID.3432).   In Ground XXX petitioner claims that the prosecutor appealed to the emotions and sympathies of the jurors.   (ECF No. 1, PageID.10, 81; MRJ Brief at 193-95, ECF No. 15-52, PageID.2494-96; Reply Brief at 85-86, ECF No. 18, PageID.3432-33).   In Ground XXXI, petitioner claims that the prosecutor misled the jury by misstating facts presented in evidence.  (ECF No. 1, PageID.10, 60; MRJ Brief at 196-200, ECF No.

15-52, PageID.2497-2501; Reply Brief at 86, ECF No. 18, PageID.3433).    Ground XXXII is a claim that the prosecutor addressed matters of credibility and/or evidence as facts, removing the jury's role as factfinder.  (ECF No. 1, PageID.10, 83; MRJ Brief at 201-02, ECF No. 15-52, PageID.2502-03; Reply Brief at 87-88, ECF No. 18, PageID.3434-35).    In Ground XXXIV, petitioner claims that the prosecutor improperly argued that petitioner lied about everything. (ECF No. 1, PageID.10, 85; MRJ Brief at 206, ECF No. 15-52, PageID.2507; Reply Brief at 88-89, ECF No. 18, PageID.3435-36).

I find that Grounds XXV, XXIX, XXX, XXXI, XXXII, and XXXIV do not provide a basis for habeas corpus relief.  Petitioner has not carried his burden under 28 U.S.C. § 2254(d).

## VI.    Cumulative Effect

Ground XXXVIII is petitioner's claim that he was denied his right to a fair trial and/or due process by the cumulative effect of all the errors and prejudice occurring in his trial, his appeal and the other legal proceedings.  (ECF No. 1, PageID.91; MRJ Brief at 218-20, ECF No. 15-52, PageID.2519-21; Reply Brief at 92, ECF No. 18, PageID.3439).

The trial court rejected petitioner's arguments for lack of merit when it denied his motion for relief from judgment.  (Opinion & Order at 16, ECF No. 15-56, PageID.2828).

I find that Ground XXXVIII does not provide a basis for habeas corpus relief. Under settled Sixth Circuit authority, a claim that the cumulative effect of errors

rendered a trial fundamentally unfair is "not cognizable" after AEDPA. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011). Constitutional errors that do not individually support habeas relief cannot be cumulated to support habeas relief under AEDPA review. *See Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010).

## VII.   Certificate of Appealability

Even though I have concluded that petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under Slack, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that … jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.

*Id.*

I find that reasonable jurists could not conclude that this Court's denial of petitioner's claims would be debatable or wrong.  Accordingly, I recommend that a certificate of appealability should be denied.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.  I recommend that a certificate of appealability be denied.

Dated:  May 30, 2018              /s/  Phillip J. Green
                                  PHILLIP J. GREEN
                                  United States Magistrate Judge


### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).